UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JEFFREY MARTIN SCHULMAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> WYNN LAS VEGAS, LLC et al., ) <br> ) <br> Defendants. ) <br> ) | 2:12-cv-01494-RCJ-GWF <br><br> **ORDER** |

This case arises out of alleged employment discrimination on the basis of Plaintiff's diabetes. Pending before the Court is a Motion for Summary Judgment (ECF No. 29). For the reasons given herein, the Court denies the motion, without prejudice.

Plaintiff Jeffrey Schulman is an employee at Wynn Las Vegas Hotel and Casino ("Wynn"). (Compl. ¶ 1, Aug. 22, 2012, ECF No. 1). He began work with Wynn on or about November 14, 2008 as a night shift security officer, at which time he disclosed to Wynn his type I diabetes. (*Id.* 10). Schulman's diabetes requires him occasionally to check his blood sugar and eat, and he applied for a day shift position because of unspecified difficulties with managing his diabetes during the night shift. (*See id.* ¶¶ 12–13). Schulman gave a doctor's note to his supervisor, Jeff Jackson (who forwarded the note to Assistant Director of Security Tony Wilmont), indicating that a day shift would assist in managing his diabetes in an unspecified way. (*See id.* ¶¶ 16–18). Schulman identifies the transfer to a day shift as the "reasonable

1  accommodation" for his diabetes he requested under the Americans with Disabilities Act
2  ("ADA"). (*See id.* ¶ 17). Although Jackson told Schulman he was ninth on the list for transfer to
3  the day shift, and although Employee Relations employee Lucy Vitaro and Executive Director of
4  Security Marty Lethitien told Schulman at a December 1, 2009 meeting that he would be
5  transferred to the day shift in January 2010, he was never transferred to the day shift. (*See id.*
6  ¶¶ 14–15, 20–21). On November 23, 2009, Wynn had disciplined Schulman for falling asleep on
7  the job. (*Id.* ¶ 23). This may have been what led to the December 1, 2009 meeting. Wynn
8  disciplined Schulman again for falling asleep on the job on February 14, 2010. (*Id.*). Schulman
9  alleges that his blood sugar was 439 (either before or after he fell asleep on February 14, 2010),
10 but Jackson refused to believe his diabetes was the cause. (*See id.*). Eventually, Wynn suspended
11 Schulman without pay, pending an investigation. (*Id.* ¶ 27). After a month, Wynn informed
12 Schulman that he would not be permitted to return as a security officer, but that he could apply
13 for other positions. (*Id.* ¶¶ 28–29).

14 After Schulman filed a charge of discrimination, Wynn rehired him as an "assistant shift
15 manager for public areas," which position did not provide as many opportunities for overtime as
16 the position of security officer did, although the hourly pay was not lower. (*See id.* ¶ 34). The
17 position was again for the night shift, and Wynn refused his request to be placed on the day shift.
18 (*Id.* ¶¶ 35). After three months, Schulman experienced low blood sugar of 38, which led Wynn
19 to suspend him for one week; Schulman does not allege the actual cause of the suspension, but
20 presumably he fell asleep or had to leave his post. (*See id.* ¶ 36). Wynn told Schulman he would
21 have to sign a "release" to return to his position, but he refused. (*Id.* ¶ 37). Wynn then provided
22 Schulman a position in retail, making less money. (*Id.* ¶ 38).

23 Schulman filed a charge of discrimination with the Equal Employment Opportunity
24 Commission ("EEOC"). After the EEOC rejected the charge, Schulman sued three Wynn
25 entities in the Court on four causes of action under the ADA: (1) discrimination; (2) requirement

1  of a pre-employment medical examination; (3) failure to accommodate; and (4) implementation
2  of impermissible standards, criteria, and methods of administration. Defendants moved to
3  dismiss for failure to file suit within ninety days of receiving the right-to-sue letter. The Court
4  granted the motion, but the Court of Appeals reversed and remanded, ruling that Plaintiff's claim
5  of having received the letter several days after Defendants' counsel received a copy of the same
6  letter, even when the letters were sent from and to the same cities on the same day, was sufficient
7  to rebut the three-day mailing presumption.
8       While the case was on appeal, Plaintiff sued Defendants again in this District, Case No.
9  2:13-cv-1447, bringing the same claims based on the same events, but this time with different
10 counsel. The cases have now been consolidated, with the present case as the lead case. Before
11 consolidation, Defendants filed a motion for summary judgment in the '1447 case. That motion
12 has been copied into the present case and terminated in the '1447 case.
13      The Court denies the present motion without prejudice—Defendants may re-file such a
14 motion in the present case at the appropriate time—and dismisses the Complaint in the '1447
15 case. A court should dismiss for improper claim-splitting any claims filed by the same party as
16 affirmative claims in an earlier action and which would be precluded in the later case were there
17 a final judgment on the merits on the claims in the earlier case. *See Adams v. Cal. Dep't. of*
18 *Health Servs.*, 487 F.3d 684, 688–89 (9th Cir. 2007). It is clear the conduct alleged in the second
19 action is the same as that alleged in the present, first action. To the extent the second action
20 includes slightly different causes of action under the ADA, Plaintiff must amend (and request
21 leave to do so, if necessary) in the present action.
22 ///
23 ///
24 ///
25 ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 29) is DENIED, without prejudice.

IT IS FURTHER ORDERED that the Complaint in Case No. 2:13-cv-1447 is DISMISSED, and the Clerk shall close that case.

IT IS SO ORDERED.

Dated this 7th day of May, 2015.

_____
ROBERT C. JONES
United States District Judge